Lee, J.
I concur with Judge Daniel in the opinion that the objection to the jurisdiction of the court in this case cannot be sustained. The failure of Ward the administrator of Richard T. Roberts, to take any measures for the recovery of the slaves from King, and his surrender of the subject for discussion and settlement between the appellant and Mrs. King, admitted in his answer, and placed upon the ground that although he knew there was a dispute about the property, yet as it was not necessary to resort to the slaves *189 for payment of debts, he thought it best for him not to engage in the controversy, but leave it to the distributees to settle the matter among themselves, constituted, as I think, a sufficient ground for the appellant to resort to a court of equity for a distribution of the slaves between herself and Mrs. King, if she could show herself entitled to such distribution. But I cannot concur in the conclusion at which he has arrived, upon the pleadings and proofs in the cause, that the appellant has shown herself so entitled. While I am of opinion that she will be entitled upon the death of Mrs. King to a moiety of the slaves for her life, I am equally of opinion that King and his wife had acquired a right to hold them during their joint lives, which it is too late now to disturb or call in question.
I think it is clear that all that the parties contemplated by the conveyance of the 22d of July 1817, was to secure the slaves to Roberts after the death of King and his wife. The acts and declarations of all the parties, including Roberts himself, show that it was fully intended to reserve an estate to King and his wife during their lives, and that after their deaths the slaves should become the property of Roberts. For notwithstanding the conveyance, King continued to hold possession of the slaves, (excepting the girl called Ann, whom it may be fairly inferred he permitted to stay in the family of Roberts as a favor under the circumstances stated in his answer,) from the time of the conveyance down to the institution of this suit, (within a few days of twenty-nine years,) and after its commencement until his death in the spring or summer of 1847, claiming at the least an estate in the property for the joint lives of himself and his wife; and Roberts permitted this possession to continue until his death, which occurred in 1845, a period of about twenty-eight years, never making any demand of possession *190 of the property or setting up any claim except to the remainder after the expiration of the life estate of and his wife. It is true the deed executed by j£jng conVeyed the property to Roberts absolutely; and doubtless he might, by a proceeding taken within proper time, have recovered the possession of it from King; nor could the latter have successfully resisted such recovery by showing that the effect and operation of the deed was not according to the real intention of the parties. But if Roberts failed to resort to any measure to recover the slaves, and permitted King to hold possession of them for twenty-eight years after he had made an absolute conveyance of them to him, under a claim of whatever - estate or interest in them, whether of the absolute property or of an estate for life, I cannot perceive how Roberts or his representatives can afterwards successfully controvert' the right of King to hold them for the estate so claimed by him. If King, after making the deed, had been permitted by Roberts to retain possession of the slaves during his (Roberts’) life, claiming to hold them absolutely as his own property, notwithstanding his deed and in defiance of Roberts, .upon the ground that the deed was obtained by fraud or was not binding upon him for any cause which he might please to assign, certainly after the death of Roberts, his representatives could never recover the slaves of King at law or in equity; and there can be no conceivable reason, as it seems to me, why because King has claimed only an estate for the lives of himself and his wife during the long period for which he has been suffered to hold possession of them under such claim, instead of the absolute property, the representatives of Roberts can any more successfully controvert the life estate claimed by King than they could the absolute property, if such had been the character of King’s claim. Indeed, if to maintain the right of King and his wife to hold the slaves during *191 their lives, it were necessary to presume a deed of retrocession of the slaves from Roberts to King for the lives of King and' wife, I can perceive no reason why, under the well settled doctrine upon that subject, such presumption might not be made. But it is not necessary to presume such a deed, because a deed from Roberts was not required to vest a life estate in the property in King and his wife. A parol gift accompanied by the possession, and which remained with the donee, would, as between the parties, be sufficient for that purpose; and if it be now necessary to presume such a gift, or whatever 'it may be necessary to presume in order to sustain the right of Mrs. King to hold the possession of the slaves as against Roberts and his representatives during her life, I think such a presumption should be made.
I think, therefore, the complainant was premature with her bill, because her right to possession of any part of the slaves will not have become perfect until the death of Mrs. King; and that the court did not err in dismissing her bill. But the dismissal should have been without prejudice to her right to maintain any proper proceeding which she may be advised to institute for the recovery of her interest in the shares after the death of Mrs. King.
Daniel, J.
The objection, to the jurisdiction, taken in the answer of King and wife, is not tenable. It is stated in the bill that all the debts due by the estate of Roberts had been paid by the administrator Ward, without a resort to the negro property; and that he had yielded any further claim upon it. And, in his answer, Ward admits that the debts had been all paid, without the necessity of using the negroes for the puipose. And that knowing the slaves were subject to distribution between the plaintiff and his codefendant alone, (no other person being interested in them,) and that there was a dispute about the pro *192 perty between them, he had thought it best for the interest of the estate he represented, not to waste it in controversies between the distributees, but to permit them to settle the matter among themselves: And that he had therefore made no objection to the institution of a suit, by the widow of Roberts, for distribution. The debts of Roberts being all paid, and his mother Mrs. King, being, in any event, entitled to a moiety of the slaves, there could have been no utility or propriety in requiring the institution of a suit at law in the name of Ward against her for their recovery; for in the event of such recovery Mrs. King would have had a right immediately to bring her suit for a partition. Probable delay, expense and circuity of action were properly anticipated and avoided by resorting at once, as Mrs. Roberts did, to a court of equity, where all the questions arising, and all the rights involved, in the controversy, could be determined and adjusted in one proceeding.
Kor do I think that any bar to a recovery of her share of the property by Mrs. Roberts, is to be found in the statute of limitations. It is true, it is not shown that there was any change in the possession of the slaves following the execution of the deed, with the exception, that Witten a witness for the defendant, says one of the negro girls lived for some time with Roberts, at a period not long before his death, but how long he did not know; and that two of the witnesses, Barnes and Thompson, also say that Roberts had in his possession for several years before his death one of the girls, Ann: But whether she was the same girl referred to in the deposition of Witten, does not distinctly appear, though it seems most probable that she was. And the witness Thompson also states that some time after the death of Roberts the girl became sick and was carried back to King’s for the purpose of being taken care of till she got well.
A change of possession, however, was not at all *193 essential to the validity of the deed, as between the parties. The deed was effectual to pass the title of the slaves; and if King continued in the uninterrupted possession of them, (with the exception before adverted to,) he did so with the acknowledgment on his part, written and recorded, that the property was no longer his, but belonged to another to whom he had sold and conveyed it. Even if Roberts had been of age, and in no wise connected with King at the date of the sale, the legal relation between the parties, in respect to the property, established and shown by the deed, could not have been changed by King, except by some unequivocal act or declaration by him, known to Roberts, evincing a purpose to disregard the deed and to hold adversely to the title which it purported to convey. But, in fact, at the date of the deed Roberts was a mere boy living with King; and instead of being a stranger, was his step son. King stood to him in the place of parent and guardian. At what time Roberts came of age is not shown; but it is stated in the answer of King and wife, that he continued to live with them till 1826, when he married and went to live on a part of the same plantation on which King resided, then given him by the latter.
The near relationship between the parties and the kind feelings on the part of King towards Roberts still subsisting, as shown by the gift of the plantation, preclude all inference (if indeed any could otherwise legally arise,) that the failure of Roberts to carry the slaves with him when he left King’s for his new home, and the continued possession of King, unaccompanied by any other act on the part of either, originated in any purpose with King to hold the slaves thereafter adversely to Roberts. The proofs in the cause have, I think, thus wholly failed in furnishing any starting point from which the running of the statute can be made to commence.
*194 The effort to base a defence on presumptions sup- . posed to arise from the long continued possession of King has, I think, also failed. It is stated in the bill, and is not denied in the answer, that Roberts died in 1845. The subpoena was sued out in July 1846, and the bill filed at the August rules following. Allowing a reasonable time for the qualification of the administrator and the institution of the suit, the date of Roberts’ death would appear to be correctly stated: and if we throw out of the computation (as I think we may properly do, for obvious reasons,) the period between the date of the deed and the time when Roberts ceased to live with King in 1826, as stated in the answer, the possession of King on which it is sought to found the presumption, would fall short of twenty years; and looking at the relation in which the parties stood to each other, and the fact that one of the slaves was in the possession of Roberts for many years previous to his death, I should, without reference to the special averments in the answer of King and wife, be strongly disinclined to presume, from King’s possession, an abandonment by Roberts of the deed, or a repurchase by King of the slaves. But when we come to examine the answer, all the grounds for such a presumption (if any otherwise existed,) are removed by its statements, and the pretensions on which the defendants seek to rest their defence. The defence set up in the answer is not, that Roberts had resold or given back the slaves to King, or abandoned the right conferred by the contract of July 1817, and that the court ought so to presume from the long possession of King, but that the deed does not truly set forth the real contract and understanding of the parties to it. In their answer the defendants (King and wife) say, that Roberts, who is the son of Mrs. King by her first husband, was brought up by them. That King having no children, treated and considered Roberts as a son; *195 and having in 1817 concluded to give him the slaves Celia and her increase, after'the death of himself and his wife, applied to David Ward, a neighbor, to draw an instrument to effect this object. That the bill of sale of the 22d July 1817 was accordingly prepared by Ward, who stated that he must have it recorded, and it would then give the negroes to Roberts after his King’s death. -That knowing nothing of the legal effect of such instruments, and having implicit confidence in the advice of Ward, who was a magistrate, he executed the instrument and had it recorded; but that his intention in doing so was only to bestow the slaves on Roberts after the death of himself and wife, and that he thought such was the effect of the paper drawn by Ward. That no consideration whatever passed from Roberts to King (though three hundred dollars was stated in the instrument as the consideration,) but that the transaction was, on King’s part, a mere voluntary act of kindness to a boy whom he had raised, and who was then in fact worth nothing whatever except a few things which he had previously given him. The answer proceeds to aver that Roberts understood the object of the instrument, and never claimed in his life time any interest in the slaves while the respondents should live. That he never had any possession under the deed, and claimed none. That he never exercised the slightest acts of ownership over them, and invariably asked the permission of the respondents when he needed the services of the slaves. In support of these averments, the only proof offered is the deposition of a single witness, who says that he had frequently heard Roberts say that King had given him a bill of sale of the negroes in controversy, and at his death he would own them all; and that he never spoke of them as his property, only at the death of King and (according to witness’s impression,) at the death of Mrs. King also.
*196 By this loose proof and continued possession, the appellee seeks to contradict and change the plain tercns and manifest legal eifect of the instrument under which Roberts claims; and in eifect, to substitute, in the place of a recorded deed purporting to convey for value a present and absolute property in the slaves, a parol voluntary gift to be enjoyed only after the death of the donor.
Such a claim on the part of the appellee is in conflict with well established rules of evidence, and plainly at war with any defence in aid of which the law of presumption from long continued possession can be invoked.
I can perceive in the case no grounds for negativing the right of Mrs. Roberts to have her distributive share of the slaves in controversy with their increase; and think that the Circuit court ought, instead of dismissing her bill, to have entertained it and given the relief sought.
Allen and Samuels, Js. concurred with Judge Daniel.
Moncure, J. concurred with Lee, J.
The decree was as follows :
The court is of opinion, that Mrs. Roberts is entitled to have distribution, as the wife of her deceased husband Richard T. Roberts, of the slaves with their increase, in the bill and proceedings mentioned; and that the decree of the 29th September 1848, dismissing her bill with costs, is therefore erroneous. The court is, however, also of opinion that the estate of King ought not to be subjected to the payment of any hire for said slaves for the time he held possession of them, before the date of Roberts’ death; the court being satisfied, from the circumstances of the case, *197 that the possession of the slaves by King during the life of Roberts was with the permission of the latter, without accountability for hire.
Therefore, it is adjudged, ordered and decreed, that the said decree-be reversed and annulled, and that the appellees pay to the appellant her costs by her about the prosecution of her appeal here expended. And the cause is remanded for proper accounts of the hires of said slaves, and all proper charges for their keeping to be taken, and for such other proceedings as may be necessary in order to a final decree.